IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.

AQYRE LLC, a Delaware limited liability company,

       Plaintiff,

v.

AQYRE REAL ESTATE ADVISORS, LLC,
t/a AQYRE REAL ESTATE ADVISORS, a Colorado limited liability company,

       Defendant.

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION AND JURY DEMAND**

Plaintiff, AQYRE LLC, a Delaware limited liability company ("Plaintiff"), through the undersigned counsel, hereby submits the following Complaint for Trademark Infringement and Jury Demand, alleging as follows:

## INTRODUCTION

This is an action for trademark infringement and unfair competition damages under the United States Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A), federal unfair competition under 15 U.S.C. §§ 1125(a)(1)(A), cybersquatting under 15 U.S.C. § 1525(d), and unfair competition under Colorado law, and deceptive business practices under COLO. REV. STAT. § 6-1-105.

This action arises out of the use by Defendant, Aqyre Real Estate Advisors (hereafter, "Defendant")'s of Plaintiff's trademark AQYRE ("AQYRE Mark"). Defendant has failed and refused to cease making use of the AQYRE Mark despite Plaintiff's written demand.

## PARTIES

1. Plaintiff, AQYRE LLC, (hereafter "Plaintiff") is a Delaware limited liability company with offices in Colorado and Texas and a significant business presence in other states including North Dakota, Montana, and Wyoming. Its Colorado office was located at 1732 Champa Street, Denver CO 80202 from 2016 until March 2020 due to the global COVID-19 pandemic which necessitated a temporary closure of physical office space. The company provides a wide variety of real property brokering services to large and small businesses in the finance, energy, and water industries and individuals managing personal ownership of real property interests, under the name AQYRE.

2. Aqyre Real Estate Advisors, LLC (hereafter "Defendant") is a Colorado limited liability company. Upon information and belief, Defendant is located in Denver, Colorado with a mailing address of 1720 S. Bellaire Street, Suite 701, Denver, CO 80222.

## JURISDICTION

3. This Court has jurisdiction over Plaintiff's claims for trademark infringement, cybersquatting and common law unfair competition pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a), 1338(b), and supplemental jurisdiction over Plaintiff's state law claim for violation of the Colorado Consumer Protection Act pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Defendant because it conducts business within the State of Colorado and because this action arises from Defendant's infringing and diluting activities within the state of Colorado.

5. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred within the State of Colorado.

## GENERAL ALLEGATIONS

### Plaintiff's Launch and Use of the AQYRE Mark

6. Plaintiff registered as "AQYRE LLC" with the Colorado Secretary of State on May 17, 2016. Currently, in addition to its business presence in Colorado where Plaintiff is headquartered, Plaintiff has a presence in Texas and throughout the Rocky Mountain region doing business as "AQYRE."

7. Plaintiff registered its domain name, aqyre.energy, on May 15, 2016.

8. Through its presence across multiple states, Plaintiff uses its expertise and contacts to assist and advise clients in the purchase, sale, leasing, and management of real property interests including but not limited to surface ownership rights, mineral rights, oil and gas leases, and water rights.

9. Plaintiff invested significant resources into selecting a unique brand name not previously used in commerce in order to effectively market its business under what is now the AQYRE Mark. Over the past several years, Plaintiff has also invested substantial time and resources to develop its client base and market the AQYRE Mark throughout the North American continent; to create, and protect its intellectual property; and to create and maintain the goodwill of its continentally-recognized "AQYRE" brand.

10. The AQYRE Mark has obtained general name recognition in the market for Plaintiff's services.

11. Plaintiff had attempted to purchase the web domain aqyre.com in June 2016. However, the domain was not purchasable by Plaintiff at that time.

12. Plaintiff's website, aqyre.energy, also enjoyed substantial search engine recognition in web searches. Plaintiff's website has been an important source of business inquiries from the general public.

13. Plaintiff has applied for trademark protection of the AQYRE Mark with the Colorado Secretary of State, with trademark ID number 20201155902, with a registration date of February 21, 2020 and a date of first use in commerce of June 1, 2016.

14. Plaintiff has applied for trademark protection of the mark "AQYRE" with the United States Patent and Trademark Office, which application has a filing date of March 3, 2020.

15. Over the last four years, the AQYRE Mark Plaintiff's mark has acquired substantial goodwill and is an extremely valuable commercial asset, serving to identify and distinguish Plaintiff's services from other available brokers on the market.

16. Plaintiff has established trademark rights in the AQYRE Mark.

17. The AQYRE mark is inherently distinctive, because of its unique spelling, and it naturally serves to identify Plaintiff as the source of business services in the market. The AQYRE Mark

is also suggestive of a characteristic of Plaintiff's services, as it requires imagination, thought, and perception to reach a conclusion about the nature of the Plaintiff's goods and services.

18. Through its extensive promotional, advertising, marketing and exclusive use of the AQYRE Mark, the AQYRE Mark has also acquired distinctiveness in the market.

### Defendant's Infringing Conduct

19. Defendant operates within Colorado as a professional service business in the business of marketing and transacting real property interests.

20. Upon information and belief, Defendant commenced business operations on or about October of 2019, over three years after Plaintiff commenced using the AQYRE Mark.

21. Upon commencing operations in the fall of 2019, Defendant has operated under the business name "Aqyre Real Estate Advisors," which is a confusingly similar variation of the AQYRE Mark.

22. Despite the fact that its name is "Aqyre Real Estate Advisors," and not "AQYRE," Defendant uses the domain name Aqyre.com to advertise its services.

23. Upon information and belief, Aqyre.com was originally created on or about May 29, 2017. WHOIS information for Aqyre.com indicates May 29, 2017 is the creation date for Aqyre.com.

24. Upon information and belief, Defendant purchased Aqyre.com from an unrelated third party in September of 2019. WHOIS information for Aqyre.com indicates the registration for Aqyre.com was updated on September 18, 2019.

25. Upon information and belief, Defendant was aware of Plaintiff's use of the AQYRE Mark at the time it adopted the business name "Aqyre Real Estate Advisors". The AQYRE Mark had been prominently displayed on its signage at its downtown office since 2016. The AQYRE Mark and Plaintiff's signage were highly visible to anyone who passed Plaintiff's offices, which were located at a high traffic downtown location at 1732 Champa Street.

26. Upon information and belief, Defendant was also aware of the high website visibility of Plaintiff's aqyre.energy domain at the time it adopted the business name "Aqyre Real Estate Advisors".

27. Defendant's website and advertising materials do not include any disclaimer indicating that Defendant is not associated or affiliated with Plaintiff.

28. Defendant's logo prominently features the "AQYRE" aspect of its infringing business name "Aqyre Real Estate Advisors," with the phrase "Real Estate Advisors" relegated to tiny font at the bottom of the logo. A sample of the logo is as follows:



29. The design of Defendant's logo, in particular, its prominent featuring of the AQYRE Mark, reflects a deliberate intent by Defendant to trade on and infringe the AQYRE Mark.

30. At no time has Defendant sought or received permission or license from Plaintiff to the AQYRE Mark.

31. Upon information and belief, Defendant adopted the infringing business name "Aqyre Real Estate Advisors" and registered the domain name Aqyre.com in order to trade on Plaintiff's goodwill in the real property brokering market in North America.

32. Upon information and belief, Defendant adopted the infringing business name "Aqyre Real Estate Advisors" and registered the domain name Aqyre.com to create consumer confusion, including but not limited to initial interest confusion, as to the affiliation, connection, or association between Defendant and Plaintiff, and/or as to the origin, sponsorship, and/or approval of Defendant's services by Plaintiff.

33. Upon information and belief, Defendant also registered the domain name Aqyre.com in order to divert internet traffic otherwise being drawn to Plaintiff's aqyre.energy domain by virtue of the internet visibility of aqyre.energy, and to enhance search results for its own domain name, aqyre.com.

34. Upon noticing Defendant's unauthorized use of the AQYRE Mark and confusingly similar variations thereof in their business operating as a real property brokerage in Colorado, Plaintiff sent written correspondence to Defendant informing it of Plaintiff's rights and requesting that Defendant forever cease using the AQYRE Mark and confusingly similar variations thereof. Defendant has failed and refused to

cease their use of the AQYRE Mark and confusingly similar variations thereof or to change its domain name.

35. Current search engine rankings indicate the search term "aqyre llc" is responsible for approximately 77% of internet traffic to Defendant's website, with the search term "aqyre energy" (the name of Plaintiff's web domain) responsible for approximately 5.5 percent of internet traffic to Defendant's website.

36. Conversely, the term "aqyre llc" is now responsible for approximately 3 percent of internet traffic to Plaintiff's website.

37. Upon information and belief, Defendant's trademark infringement described herein is willful.

38. Defendant's trademark infringement as described herein has caused actual confusion, including but not limited to initial interest confusion and incidents of mistaken identity of the Plaintiff, among its actual and potential customers as to the affiliation, connection, and/or association between Defendant and Plaintiff, as well as business partners and vendors.

39. Defendant's registration of the domain name Aqyre.com as described herein has also reduced Plaintiff's search results rankings and interfered with the online visibility of Plaintiff's aqyre.energy website.

40. Defendant's infringing conduct as described herein has also reduced the number of new inquiries for Plaintiff's services.

41. Defendant's unauthorized use of the AQYRE Mark has affected and/or will affect a large number of consumers, as Plaintiff may be engaged at any time with contacting and managing relationships with hundreds or even thousands of consumers with regard to their potential real property ownership as it affects Plaintiff's clients.

42. These consumers often own mineral interests inherited from ancestors or family members, and are often not sophisticated as to real property issues. They are often unaware of the specifics of their

6

property ownership interests and are inexperienced at navigating real property conveyances such as selling or leasing their real property interests.

43. Defendant's unauthorized use of the AQYRE Mark is likely to confuse these consumers with respect to both the separate identities of Plaintiff and Defendant, as well as the lack of a relationship between Plaintiff and Defendant. Professional service providers engaged in business with Defendant have already been confused by Defendant's use of the AQYRE Mark and mistakenly sent invoices to Plaintiff, who had no relationship with these service providers. Presumably, these services providers located Plaintiff when searching for the name "Aqyre" and located Plaintiff, and were unable to discern the difference between Plaintiff and their customer, the Defendant.

44. Inevitably, if consumers in the future are attempting to contact Plaintiff regarding Plaintiff's offers to buy or lease their real property interests, an even greater amount of confusion is likely to occur given their relative lack of sophistication as compared to a professional services company engaged in performing services for Defendant, in addition to Defendant's use of the aqyre.com domain to promote their services as a broker of real property interests.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement, Unfair Competition, and False Advertising in Violation of U.S.C. 1125(a)(1)(A) and (B))

45. Plaintiff expressly realleges and incorporates the allegations in the preceding paragraphs as though set forth fully herein.

46. Defendant has used in commerce the AQYRE Mark and confusingly similar variations thereof in connection with the provision of real property brokering services.

47. Upon information and belief, Defendant deliberately copied the AQYRE Mark in order to impermissibly benefit from Plaintiff's goodwill, reputation and success.

48. As a result of Defendant's infringing use of the AQYRE Mark and confusingly similar variations thereof, consumers have been and will continue to be confused about the relationship between Plaintiff and Defendant and whether Defendant is affiliated with or has been authorized by Plaintiff to use the AQYRE Mark.

7

49. As a result of Defendant's infringing use of the AQYRE Mark and confusingly similar variations thereof, professional service companies, including those with existing business relationships with Defendant, have been and will continue to be confused about the identify of Plaintiff and Defendant and the relationship between Plaintiff and Defendant. Plaintiff is already being sent invoices for services rendered to Defendant, and significant time and effort is required to convince such service providers that Plaintiff and Defendant are separate and distinct entities. This confusion is exemplary of the continued confusion that is likely to occur among not only service providers and professional companies, but also the general public if Defendant's infringing use of the AQYRE Mark and confusingly similar variations thereof should continue.

50. Upon information and belief, Defendant's misleading use of the AQYRE Mark and confusingly similar variations thereof is has deceived and has a tendency to continue to deceive a substantial segment of the relevant consuming public.

51. Upon information and belief, the deception present in Defendant's advertising is material, has influenced, and will continue to influence, the purchasing decisions of potential consumers.

52. Plaintiff has been and will continue to be damaged by Defendant's acts of infringement and false advertising in an amount to be determined at trial.

53. Upon information and belief, Defendant's conduct as described herein is willful, deliberate, intentional, and in bad faith.

54. As a result of Defendant's acts, defendant has caused and will continue to cause irreparable harm to Plaintiff and to the goodwill associated with the AQYRE Mark. Plaintiff has no adequate remedy at law and is entitled to injunctive and other relief.

## SECOND CLAIM FOR RELIEF
### (Cyber-Squatting in Violation of U.S.C. § 1125(d)(1)(A))

55. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

56. Upon information and belief, Defendant has a bad faith intent to profit from its unauthorized use of the AQYRE Mark and confusingly similar variations thereof.

57. Upon information and belief, Defendant has used and is using the Aqyre.com domain name, which at the time of its purchase and registration by Defendant was identical or confusingly similar to the AQYRE Mark.

58. Upon information and belief, Defendant's use of this domain name is intended to divert consumers from Plaintiff's aqyre.engery website to Defendant's Aqyre.com website.

59. Defendant's actions have caused direct injury to Plaintiff and harmed the goodwill represented by the AQYRE Mark.

60. Defendant's use of Aqyre.com is suggesting a connection between Plaintiff and Defendant that does not exist.

61. Defendant's actions have been for commercial gain and have created a likelihood of confusion as to the source, sponsorship, control, affiliation or endorsement of the Aqyre.com website.

62. Defendant has committed and is continuing to commit acts of cyber-squatting in violation of 15 U.S.C. § 1125(d).

63. Defendant's cyber-squatting has caused and will continue to cause damage and irreparable harm to Plaintiff. Unless enjoined by the Court, Defendant's cyber-squatting is likely to continue unabated, causing further damage and irreparable harm to Plaintiffs and the valuable goodwill symbolized by the Aqyre Mark.

64. Upon information and belief, Defendant's cyber-squatting is and was intentional, knowing and willful.

65. As a result of Defendant's activities, Plaintiff has been damaged in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF
### (Common Law Trademark Infringement under Colorado Law)

66. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

67. Plaintiff is the owner of common law rights in and to the AQYRE Mark which is uniquely associated with Plaintiff as a source of real property brokering services.

68. Plaintiff has established goodwill associated with the AQYRE Mark and Defendant is trading upon Plaintiff's goodwill through unauthorized and unlicensed use of Plaintiff's common law trademark rights in The AQYRE Mark.

69. Defendant's intentional, unauthorized use of the AQYRE Mark and confusingly similar variations thereof in connection with the sale and offering for sale of real estate brokerage services has caused and is likely to continue to cause confusion or to cause mistake or to deceive, in violation of Colorado common law.

70. Defendant's intentional, unauthorized use of the AQYRE Mark and confusingly similar variations thereof in connection with the sale and offering for sale of real estate brokerage services constitutes infringement of Plaintiff's preexisting common law rights in the AQYRE Mark which Plaintiff acquired in good faith.

71. Upon information and belief, by deliberately using the AQYRE Mark and confusingly similar variations thereof, Defendant has willfully, knowingly, and in bad faith– and continues to violate – Plaintiff's common law trademark rights.

72. As a result of Defendant's acts, Defendant has caused and will continue to cause irreparable harm to Plaintiff and to the goodwill associated with the AQYRE Mark, for which Plaintiff has no adequate remedy at law.  Thus, Plaintiff is entitled to injunctive and other relief.

**FOURTH CLAIM FOR RELIEF**
**(Common Law Unfair Competition Under Colorado Law)**

73. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

74. Plaintiff is the owner of the trademark rights in and to the AQYRE Mark under Colorado common law as established by Plaintiff's use of the mark since 2016.

75. Plaintiff has established goodwill associated with the AQYRE Mark and Defendant is trading upon Plaintiff's goodwill through unauthorized and unlicensed use of The AQYRE Mark in Defendant's business.

76. Upon information and belief, Defendant has misappropriated the AQYRE Mark in order to exploit and trade off Plaintiff's goodwill and reputation in the market.

77. Defendant's conduct, including as described above, has caused and will likely continue to cause mistake or confusion or to deceive as to the affiliation, connection, and/or association of Plaintiff with Defendant as to the origin, sponsorship, or approval of Defendant's commercial activities by Plaintiff, and/or as to the nature and quality of Defendant's services, in violation of Colorado common law.

78. Upon information and belief, Defendant's unfair and unlawful conduct, including as described above, was deliberate, knowing, and in willful disregard of Plaintiff's intellectual property rights.

79. Upon information and belief, Defendant's intentional and willful actions set forth above constitute unlawful "passing off" under Colorado unfair competition common law.

80. Defendant's actions have caused and will continue to cause irreparable injury to Plaintiff and have resulted and will continue to result in unjust enrichment to Defendant unless Defendant is restrained and/or enjoined by this Court from further violations of Plaintiff's intellectual property rights.

81. As a result of Defendant's acts, Defendant has caused and will continue to cause irreparable harm to Plaintiff and to the goodwill associated with the AQYRE Mark, for which Plaintiff has no adequate remedy at law. Thus, Plaintiff is entitled to injunctive and other relief.

## FIFTH CLAIM FOR RELIEF
### (Deceptive Business Practices Under Colorado Law, COLO. REV. STAT. § 6-1-105)

82. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

83. Plaintiff is the owner of the trademark rights in and to the AQYRE Mark under Colorado common law as established by Plaintiff's use of the mark since 2016.

84. Plaintiff has established goodwill associated with the AQYRE Mark and Defendant is trading upon Plaintiff's goodwill through unauthorized and unlicensed use of the AQYRE Mark in Defendant's business.

85. In the course of Defendant's business, Defendant has used deceptive representations in connection with its services by using the AQYRE Mark in connection with Defendant's services, which is identical or confusingly similar to the AQYRE Mark.

86. Defendant is knowingly making a false representation as to the source, sponsorship, approval, or certification of their services through its unauthorized use of The AQYRE Mark in connection with their business dealings.

87. In the course of its business, Defendant is using a business name which is identical or confusingly similar to the AQYRE Mark in connection with the promotion and performance of their business without authorization from Plaintiff.

88. The public and relevant consumers associate The AQYRE Mark with Plaintiff and its services, particularly with regard to providing brokering services with regard to real property, and Defendant's use of the AQYRE Mark has given rise to actual consumer confusion and will continue to cause consumer confusion in the future.

89. Defendant's unauthorized use of the AQYRE Mark substantially impacts the public by falsely signaling to the general public that there is an affiliation between Plaintiff and Defendant and/or that Plaintiff has approved the services offered by Defendant, which it has not.

90. Defendant's intentional and willful actions set forth above constitute unlawful and deceptive business practices under COLO. REV. STAT. § 6-1-105.

91. Defendant's actions have caused and will continue to cause irreparable injury to Plaintiff and have resulted and will continue to result in unjust enrichment to Defendant unless Defendant is restrained and/or enjoined by this Court from further violations of Plaintiff's rights.

92. As a result of Defendant's acts, Defendant has caused and will continue to cause irreparable harm to Plaintiff and the goodwill associated with The AQYRE Mark, for which Plaintiff has no adequate remedy at law. Thus, Plaintiff is entitled to injunctive and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief from this Court:

A. Enter judgment in favor of Plaintiff, and against Defendant, on all Claims for Relief.

B. Enter an award of monetary damages in an amount to be determined at trial, including but not limited to an award of damages and treble damages pursuant to C.R.S. § 6-1-113(a).

C. Preliminarily and permanently enjoin Defendant from directly or indirectly engaging in any further trademark infringement, unfair competition, or deceptive trade practices against Plaintiff, and from aiding, abetting, encouraging, or inducing another to do so.

D. Order an accounting and order Defendant to Pay over to Plaintiff:

   a. All monetary gains, profits, and advantages derived by Defendant from the acts complained of herein;

   b. Damages incurred by plaintiff, including enhanced damages (up to treble damages) as authorized by 15 U.S.C. § 1117;

   c. Punitive and exemplary damages to be determined by the Court after a full hearing on the merits; and

   d. Plaintiff's costs and disbursements in this action, including reasonable attorneys' fees and prejudgment and post-judgment interest.

E. Award Plaintiff any other or further relief that the Court deems just or appropriate.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted July 16, 2020.

                                          THOMAS P. HOWARD, LLC

                                        */s/ William C. Groh*_____
                                        William C. Groh, No. 43577
                                        842 W. South Boulder Rd., Ste. 100
                                        Louisville, CO  80027
                                        303-665-9845
                                        wcgroh@thowardlaw.com
                                        *Attorney for Plaintiff*